Gibson, Dunn & Crutcher LLP v Koukis (2025 NY Slip Op 01565)

Gibson, Dunn & Crutcher LLP v Koukis

2025 NY Slip Op 01565

Decided on March 18, 2025

Court of Appeals

Wilson, Ch. J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 18, 2025

No. 23 

[*1]Gibson, Dunn & Crutcher LLP, Appellant,
v
Efthalia Koukis, & c., Respondent, et al., Defendants.

Seth M. Rokosky, for appellant. 
Joseph A. Aronauer, for respondent. 

WILSON, Chief Judge:

On this appeal, we must resolve the following question of law: is there a material factual dispute as to whether attorney Gil Santamarina—who entered an appearance purporting to represent defendant George Koukis in this litigation—validly waived Mr. Koukis's personal jurisdiction defenses? The answer is yes. We therefore reverse and remit for further proceedings.
I.
This case arises out of a long-running dispute over legal fees owed to Gibson Dunn by Be In, Inc. ("Be In"), a New York corporation. Mr. Koukis was an investor in Be In. He also owned and controlled Zeus Corporation, a Marshall Islands entity that was a shareholder of Be In. Until his recent death, Mr. Koukis was domiciled in Switzerland.
Other relevant figures in this case include members of the D'Anna family (Elio D'Anna Sr., Joseph D'Anna, Elio D'Anna Jr., and Elia D'Anna) who are all founders or shareholders of Be In and are, like Mr. Koukis, domiciled in Switzerland. Alessandro Nomellini is the executive director and CFO of Be In.
The story begins, for our purposes, in January 2013, when Mr. Nomellini retained Gibson Dunn to represent Be In in a lawsuit in California. After Be In failed to pay its legal fees, Gibson Dunn obtained a California judgment against the company. In August 2016, Gibson Dunn domesticated that judgment in New York Supreme Court.
Gibson Dunn was unable to recover from Be In. In December 2016, Gibson Dunn commenced this action to enforce the existing judgment against the D'Annas and Mr. Koukis. Gibson Dunn asserted fraudulent conveyance claims and alter ego/misuse of corporate form claims.
On November 17, 2017, Gibson Dunn moved for default judgment. Gibson Dunn and the defendants (Mr. Koukis and the D'Annas) then entered into a stipulation whereby Gibson Dunn agreed to extend the time for defendants to answer the motion and, in exchange, defendants waived all defenses based on service of process and lack of personal jurisdiction. The stipulation was signed by Mr. Santamarina as the "Attorney for Defendants."
In January 2019, Supreme Court denied Gibson Dunn's motion for a default judgment. Gibson Dunn moved for reargument. Separately, in April 2019, Mr. Santamarina moved to withdraw as counsel, asserting that the D'Annas and Mr. Koukis had failed to pay him for his legal services. The court denied Mr. Santamarina's motion, and Mr. Santamarina remained defendants' sole counsel of record. The record does not indicate that Mr. Koukis complained about Mr. Santamarina's lack of authorization to represent him when Mr. Santamarina was prevailing against Gibson Dunn's request for a default judgment.
However, in June 2019, Supreme Court granted Gibson Dunn's motion for reargument, vacated its January 2019 order, and granted Gibson Dunn's motion for a default judgment. Mr. Santamarina filed a notice of appeal on behalf of all defendants but no further action was taken on that appeal.
Approximately two years after the default judgment, however, Mr. Koukis moved to strike Mr. Santamarina's appearance on his behalf, vacate the default judgment as against him, and dismiss the complaint as against him for lack of personal jurisdiction and improper service. He relied, in part, on a December 2019 email—sent several months after Supreme Court reversed itself and granted a default judgment in favor of Gibson Dunn—in which he told Mr. Santamarina: "I take this opportunity to inform you that I have not authorized you to represent me in any legal or other matters." He also relied on Mr. Santamarina's September 2019 acknowledgment, made in response to a subpoena from Gibson Dunn, that Mr. Santamarina did not have the contact information for any defendant other than Joseph D'Anna.
Supreme Court decided Mr. Koukis's motion without a factual hearing, holding that Mr. Santamarina lacked authority to act on Mr. Koukis's behalf and vacating his waiver of personal jurisdiction and service defenses. But Supreme Court concluded that personal jurisdiction existed over Mr. Koukis pursuant to CPLR 302 (a) (2). It therefore set the matter down for a traverse hearing to determine if service on Mr. Koukis of the summons and complaint was proper.
Before the traverse hearing occurred, the Appellate Division modified the order of Supreme Court by vacating the default judgment and granting Mr. Koukis's motion to dismiss based upon a lack of jurisdiction. The Appellate Division held that "there was no basis to conclude that Koukis authorized Santamarina to appear and waive all jurisdictional defenses on his behalf" (215 AD3d 448, 450 [1st Dept 2023]). Additionally, the majority departed from Supreme Court in its analysis of CPLR 302 (a) (2), concluding that the court did not have personal jurisdiction and dismissing the complaint in its entirety (see id. at 451). Two Justices partially dissented on the ground that Supreme Court should have held a hearing to determine whether Mr. Santamarina had the authority to represent Mr. Koukis (see id. at 451-454 [Friedman, J., dissenting in part]. We now reverse on the basis that there is a material factual dispute as to whether Mr. Koukis authorized or ratified the waiver of personal jurisdiction.
II.
Gibson Dunn was entitled to a factual hearing to determine whether Mr. Santamarina validly appeared on Mr. Koukis's behalf and waived personal jurisdiction. Where the record shows a "factual dispute on a material point which must be resolved before the court can decide the legal issue," the court may not grant the motion without first holding a hearing (People v Gruden, 42 NY2d 214, 215 [1977]; see also CPLR 2218). Whether the record gives rise to such a factual dispute is a question of law (cf. St. Paul Fire and Mar. Ins. Co. v Capri Const. Corp., 78 NY2d 1016, 1018 [1991] [finding that "issues of fact remain to be resolved, precluding the grant of summary judgment in plaintiff's favor"]).
Emails in the record from July 2019 and November 2019, along with Mr. Santamarina's affirmation and filings in this litigation, give rise to a factual dispute over whether Mr. Santamarina validly waived Mr. Koukis's jurisdictional defenses. The evidence raises a fact question as to whether Mr. Koukis gave Joseph D'Anna the apparent authority to retain Mr. Santamarina as Mr. Koukis's attorney. As the Appellate Division dissent explains, the evidence also indicates that Mr. Koukis may have ratified Mr. Santamarina's representation "through knowing [*2]acquiescence in the representation as it continued through an extended period of time" (215 AD3d at 453 [Friedman J., dissenting in part]).
Emails from November 2019 suggest that Mr. Koukis had been aware of Mr. Santamarina's representation for at least a year and had repeatedly discussed the litigation with Joseph D'Anna. On November 6, 2019, Mr. Koukis emailed Joseph D'Anna asserting that Joseph D'Anna had "managed this totally on [his] own, appointing and dismissing lawyers without any consultation with the shareholders." Joseph D'Anna responded: "It is with surprise that I read your email, as you have been aware of this US proceedings [sic] for well over a year, and we've had plenty of discussions with both yourself and Julian on why these proceedings have been issued against Be In Inc. and its shareholders and what we are doing to defend them." In a separate email on November 7, 2019, Joseph D'Anna refused to sign an affidavit, presumably tendered by Mr. Koukis or someone acting on his behalf, stating that Mr. Koukis was "unaware of the US proceedings." According to Joseph D'Anna's email, that statement "would be a lie and subject to perjury." He continued: "You have been fully aware of this action and either you take your own legal representation and decide by your own means how to better defend your position independently from the Company, or you stay with the Company's appointed attorney and wait for the final resolution of the appeal - whatever the outcome." Joseph D'Anna's emails create a sufficient factual issue to require a hearing on Gibson Dunn's theories of apparent authority and ratification.
Emails from July 2019 provide further evidence that Mr. Santamarina may have authorized or ratified the representation. On July 23, 2019, Elio D'Anna Jr. emailed "George [Koukis]" and "Joseph [D'Anna]" asking, "How did my name end up in a judgment in NY?" He attached a copy of the default judgment. Later that day, in an email addressed to "George, Jo, Elia," Elio D'Anna wrote: "there is an attorney in NY that says he represents me but I have never heard his name and I have never instructed any attorney in NY to represent me." On July 24, 2019 Joseph D'Anna responded, writing:
"Mr. Koukis is already up to speed with the details of this litigation but, for your clarification, this is the short of it: . . . Our lawyers in defending Be In, had to automatically also defend all the names that were listed in the pleadings (even the ones that were no longer in the company) — whether they asked for it or not — just because this is the way the Claim was pleaded."
Mr. Koukis argues that the emails from the D'Annas are irrelevant because he did not author them. The absence of statements from Mr. Koukis may be relevant to determining whether Mr. Santamarina validly represented him, but the emails are sufficient to establish a factual dispute requiring discovery and a hearing.
In addition to the emails, Mr. Santamarina's filings and statements suggest that he may have validly appeared on Mr. Koukis's behalf. Mr. Santamarina signed filings—including the stipulation waiving personal jurisdiction defenses and the notice of appeal—on behalf of "all defendants." In April 2019, in an effort to withdraw from the case due to unpaid legal fees, Mr. Santamarina signed a sworn affirmation describing himself as "principal of the law firm Santamarina & Associates, the attorneys for Defendants Joseph D'Anna, Elio D'Anna Jr., Elio D'Anna Sr, Elia D'Anna, and George Koukis." He affirmed that Joseph D'Anna signed the retainer agreement "on behalf of all defendants" and that his firm "had undertaken to vigorously defend this matter and, to date, has done so successfully on behalf of Defendants."
The emails, filings, and affirmation are more than sufficient to raise a factual dispute as to whether Mr. Santamarina validly waived personal jurisdiction. Agency law principles apply to the attorney-client relationship (see Hallock v State of New York, 64 NY2d 224, 230 [1984]). Under those principles, Mr. Koukis may have given Joseph D'Anna apparent authority to retain Mr. Santamarina on his behalf. In addition, a principal may ratify after the fact an action that was not otherwise authorized through an "objectively or externally observable indication that a person consents that another's prior act shall affect the person's legal relations" (Restatement [Third] Of Agency § 4.01 [2006]). Even if Mr. Santamarina did not have authority at the time he waived personal jurisdiction, Mr. Koukis may have ratified that act by later consenting to the representation or by "retain[ing] the benefit" of the representation "with knowledge of the material facts" (Standard Funding Corp. v Lewitt, 89 NY2d 546, 552 [1997]).
Mr. Koukis argues, citing Hallock v State of New York (64 NY2d 224 [1984]), that an attorney may not waive personal jurisdiction without specific authorization from the client. That argument is incorrect. First, Hallock established only the well-settled principle that an attorney requires specific authorization to "compromise or settle a claim"; a waiver of personal jurisdiction was not at issue in that case (id. at 230). Second, the stipulation and emails [*3]establish a factual dispute not only as to whether Mr. Santamarina had authority to represent Mr. Koukis generally, but also as to whether Mr. Koukis authorized or ratified the waiver itself.
III.
There is a factual dispute as to whether Mr. Santamarina validly waived personal jurisdiction defenses on Mr. Koukis's behalf. We do not reach the question of whether there may be personal jurisdiction under CPLR 302 (a) (2).[FN1]
Accordingly, the order of the Appellate Division insofar as appealed from should be reversed, with costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion.
Order insofar as appealed from reversed, with costs, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein. Opinion by Chief Judge Wilson. Judges Rivera, Garcia, Singas, Cannataro, Troutman and Fisher concur. Judge Halligan took no part.
Decided March 18, 2025

Footnotes

Footnote 1: Depending on the outcome of the factual inquiry into the waiver, the issue of personal jurisdiction under CPLR 302 (a) (2) may be academic. If it is not, Gibson Dunn may raise it on a future appeal.